## Combs v. Griffiths.

(Decided March 3, 1922.)

## Appeal from Perry Circuit Court.

1. Boundaries—Location of Patents.—The first rule for the location of patents is to ascertain what was the intention of the parties at the time the survey was made, and to locate it in accordance with that intention, provided it may be done without violence to well settled legal principles. Some of the rules to be applied in such cases are, that courses and distances surrender to natural objects, and distances surrender to courses, and that the least number of changes either in courses or distances will be adopted which will locate and close the patent conformably to the gathered intention of the parties.

2. Boundaries—Locating Lost Corners—Courses and Distances.—It is competent in locating lost corners between two known ones to reverse the calls, and if in doing so it is necessary to close the patent that only one line between the two known corners should be lengthened to apply it to only one line, if to apportion the distance to all the lines would result in changing not only the distance of each line but also its course and at the same time make but little difference in the land contained as well as the shape of the surveyor's plat. Furthermore, if to appropriate the increased distance entirely to one line would more nearly conform to the intention of the parties, as manifested by their acts and conduct since the survey was made, it is proper to do so.

P. T. WHEELER and MILLER & CRAFT for appellant.

B. P. WOOTTON and WOOTTON, REEVES & WOOTTON for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The decisive question in this case is the proper location of a patent for three hundred acres of land in Perry county issued to John Gillum on July 1, 1850, upon a survey made August 17, 1849. There was issued to Phillip W. Hall on July 1, 1851, a patent for two thousand acres of land, the survey of which was dated December 13, 1850. The Hall patent to some extent laps on the prior one issued to Gillum, and being junior to the latter one it is void to the extent of the lap. The appellant and plaintiff below, Elzira Combs, is the owner by successive conveyances of a portion of the Hall patent and her deeded boundary includes that portion of it which laps on the Gillum patent, while the appellee and defendant below,

Samuel Griffiths, owns by successive conveyances a portion of the Gillum patent including that contained in the lap of the Hall patent. He was proposing to cut, sell and brand some timber which he claimed was located in the lap, and within the boundary of the Gillum patent, when plaintiff brought this action against him to enjoin him from doing so upon the ground that the timber which he was proposing to appropriate was not located within the lap of the Hall patent and consequently belonged to plaintiff, although she conceded that the patent under which she claimed lapped to some extent on the Gillum patent but which did not include the particular timber involved. Defendant denied plaintiff's ownership in the land upon which the timber stood and asserted ownership in himself, (a) because of his title from the Commonwealth under and through the Gillum patent, and (b) because of continuous adverse possession by himself and immediate vendors of that portion of the land in controversy for more than fifteen years before the filing of the suit. Appropriate pleadings made the issues and upon final hearing the court located the Gillum patent so as to include the land in controversy, which is a small quantity, but the exact acreage is not shown, and dismissed plaintiff's petition, to reverse which judgment she has appealed to this court.

Courts in locating patents, as in dealing with all other individual transactions, recognize the imperfections of humanity and that even the most painstaking are liable to commit mistakes, and that the thing to be done is to ascertain what was the intention of those whose work is under review, and in the case of a patent to locate it according to that intention. The most recent statement of this court of the rule, as applicable to the location of patents, is found in the case of Kentucky Union Company v. Shepherd, 192 Ky. 447, wherein it is stated: "The supreme task of a court in locating a patent is to ascertain the intention of the parties at the time of making the survey and to adopt the location which the parties intended to make upon the ground at the time. For the performance of this task numerous rules have been adopted largely, if not entirely, analogous to the rules for the construction of other contracts and writings. None of them is inexorable nor should any of them be given indubitable weight."

It is furthermore the rule, of such familiarity and such frequent application as to require the citation of no

supporting cases, that where natural objects are called for the lines of the patent must substantially conform to them at the expense of courses and distances, and further, that distances may be shortened or lengthened in order to conform the location of the patent to and with the natural objects called for. Another rule is that where the corners are natural objects it will be presumed that the patent was actually surveyed and the courses and distances were actually run upon the ground at the time, which presumption does not necessarily follow where the calls are for stake corners only.

The beginning corner of the Gillum patent is on the south side of Laurel Fork of Maces creek on the North Fork of Kentucky river about fifty poles from its mouth, and proceeds with courses and distances to natural object corners to corner 21, which is the fifth reverse one from the beginning, there being about twenty-five corners and twenty-six lines around the patent. According to the contention of defendant, which the court adopted in its judgment, the line of the Hall patent entered upon the Gillum one between the eleventh and twelfth corners on its east side and between its sixteenth and seventeenth corners on the other side; while it is the contention of plaintiff that the line of the Hall patent first crosses the Gillum patent between corners twelve and thirteen and passes out of it between corners fifteen and sixteen, which makes the acreage of the lap considerably less than the court found by its judgment.

There were three maps of the Gillum survey filed by three different surveyors who testified in the case and who were J. A. Boggs, W. A. Ward and J. M. Hall, the latter of whom is a son of P. W. Hall, the original patentee of the two thousand acres under whom plaintiff claims. There is some discrepancy as to the true location of the first corner, but we think the great preponderance of the evidence shows it to be at the large rock on the single red line on the map of J. M. Hall. However, there would be but little, if any, difference as to the inclusion or exclusion of the land in controversy if the beginning corner was fixed as contended for by plaintiff, since, if that was done, the natural objects marking corners 10, 11 and 12, under the rule, *supra,* would have to be reached or approximately so in locating the patent, and it is from these natural objects, which the court found and which we think the evidence establishes, that the succeeding lines around to corner 21 would have to be run,

and the decision of the case depends upon the true location of the lines from corner 12 to corner 17. The corners from 12 to 17 are lost, the natural objects called for having been destroyed by the clearing of land or cutting of timber. Corner 12 is a beech and there is satisfactory evidence that it was properly located by the court in its judgment. That corner is on the east side of the survey and the next located corner is 17 on the west side, which is a rock. Following the courses and distances between those corners the survey would not close, and to make it do so the court adopted the lines running from corners 12 to 13 and from 13 to 14, running them according to the survey and the patent. It then located corner 17 at the rock, which it is conclusively proven marks that corner, and reversed the calls according to the courses and distances till corner 15 was reached. From that point to corner 14, as located above, the course was the same as that given in the patent and survey, but the distance was about 53 poles longer. This method, according to the testimony of the surveyors, practically closes the survey and preserves essentially the courses and distances of each of the calls except the distance of the one referred to. That it is competent and proper, following the rules, *supra,* to reverse the calls between the two known corners and thus locate intervening lost ones has been frequently announced by this court, the latest case being Louisville Property Co. v. Rose, 184 Ky. 221; and that it is competent to lengthen the distance of a particular call, especially when it conforms to the course in the patent in order to close it is upheld in the two cases, *supra,* and in the recent cases of Cornett v. Ky. River Coal Co., 175 Ky. 718; Scott v. Thacker Coal Mining Co., 191 Ky. 782, and others referred to in each of them. These rules are conceded by counsel for appellant, but they insist that the closing of the patent should have been accomplished by distributing the distances among the intervening lines and calls from the twelfth corner to the seventeenth corner, which perhaps in some instances and under some circumstances might be the correct method, although no case directly so holding is cited. But, since as we have seen, the first rule is to ascertain the intention of the parties, including the surveyor of the patent, the method to be adopted under such conditions should be varied in each case according to what appears to have been that intention. As shown in the Kentucky Union Company case, *supra,* reputation, contemporaneous acts of the parties,

and other extraneous facts may be looked to in arriving at what was the original intention of the parties. It is shown in this case that the land cleared by defendant and his predecessors in title extends to and includes corners 16 and 17, as adopted by the court, and follows practically the lines between those corners. To undertake to distribute the distance between corners 14 and 15 among the lines between corners 12 and 17 would not only change the courses and distances of each of those lines but would exclude a considerable portion of the land which has been cleared for from 20 to 30 or more years. Besides, to arrange the lines after that manner would reduce the lap of the Gillum patent only in the southwest portion of it and would have but little effect upon it on the east side where the land in controversy is located.

In the Cornett case, *supra,* it is stated that, "It has long been the rule in attempting to locate lost lines to give preference to the courses rather than to the distances, and to close the survey, if possible, by lengthening or shortening the distances rather than changing the courses, but in so doing the error in distances must be reasonable and should be apportioned to all of the lost lines rather that arbitrarily placing it in only some of them. This rule of sacrificing distances to courses is only a general rule and is subject to many exceptions, where, from the evidence of a particular case, some other more satisfactory method of adjusting the error is disclosed." The statement in the excerpt that the error in distances "should be apportioned to all of the lost lines rather than arbitrarily placing it in only some of them" also embodies only a general rule which itself "is subject to many exceptions," arising from the evidence in the particular case, and from which the true intention of the parties may be gathered.

We think the evidence in this case, some of which we have referred to, renders the method adopted by the court in closing the survey "more satisfactory" and conforms not only to the evidence in the case, as well as the finding of the trial court, but also as to what was evidently the intention of all parties concerned, including the surveyor of the patent.

Being unable to find any reason sufficient to authorize a reversal of the judgment, it must be and is affirmed.